UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Double Down Development, LLC, a Michigan limited liability company,　　) ) ) ) Plaintiff,　　　　　　　　　　　　　) ) ) ) v.　　　　　　　　　　　　　　　　　) ) Lansing Future Development II, LLC, ) a Michigan limited liability company, and ) Jerry D. Campbell　　　　　　　　　　) ) ) Defendants.　　　　　　　　　　　　) | Case No.<br><br>HON.<br><br>JURY DEMANDED |

Darren Malek (P57443)
VERITAS LAW GROUP
Attorneys for Plaintiff
107 W. Michigan Avenue, Suite 500
Kalamazoo, MI 49007
dmalek@veritaslawgroup.net

## COMPLAINT

Plaintiff, Double Down Development, LLC, by and through their undersigned counsel, hereby presents the following claims against Lansing Future Development II, LLC ("LFD II") and Jerry D. Campbell ("Campbell"), involving a business or commercial dispute pertaining to a business contract among the parties, to wit:

### Parties

1. LFD II is a Michigan limited liability company.

2. LFD II has offices in Oakland County, Michigan and does business in Kalamazoo County, Michigan, including entering into the transactions and agreements forming the basis of

this Complaint.

3. LFD II is a manager-managed limited liability company.

4. Campbell is, upon information and belief, a resident of the State of Florida.

5. At all relevant times, Campbell was either the actual manager or the actual de facto operational manager of LFD II notwithstanding that others may have nominally been identified as the "manager" of LFD II.

6. Double Down Development, LLC is a Michigan limited liability company ("Double Down").

7. Double Down has offices in, and operates primarily out of, Kalamazoo County, Michigan.

## Jurisdiction

8. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter because it involves citizens of different states and the amount in controversy exceeds $75,000.

## Venue

9. Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(1) because Double Down has offices in the State in which this district is located.

10. Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action, is situated in this judicial district.

## **General Allegations**

11. LFD II was formed for the purpose of performing pre-development and development work on behalf of the Kewadin Casinos Gaming Authority / Sault Saint Marie Tribe of Chippewa Indians (the "Tribe") in connection with a contemplated newly created casino property being developed by the Tribe and intended to be located in downtown Lansing, Michigan (the "Project").

12. In return for advancing work and funds in connection with the Project, the Tribe agreed to pay LFD II a development fee (the "Development Fee").

13. LFD II had funding problems and, in 2015, LFD II approached Double Down to provide LFD II with funds to allow LFD II to continue to meet its obligations to the Tribe in connection with the Project.

14. Campbell lead all of these discussions on behalf of LFD II leading up to LFD II's investment.

15. Campbell, in his personal capacity, LFD II and Double Down each signed and entered into a Binding and Non-Binding Letter of Intent on July 7, 2015 which referenced a certain loan made by Double Down to LFD II (the "Letter of Intent").  **Exhibit 1**.

16. The Letter of Intent also contemplated other business matters, including that the parties would continue to negotiate regarding additional funding of LFD II by Double Down.

17. After negotiating for a period of time following the execution of the Letter of Intent, Double Down agreed to provide funding and, in consideration for that funding – in addition to other value exchanged between the parties and affiliated parties, LFD II would assign to Double Down eight percent (8%) of its Development Fee (the "Assigned Interest").

18. To formalize the agreement related in Allegation 13, above, on November 5, 2015, Double Down and LFD II entered into a "Partial Assignment of Development Fee," which was dated as of October 31, 2015 (the "Assignment").

19. A true and accurate copy of the Assignment is attached to this Complaint as **Exhibit 2**.

20. For the sake of clarity, the Assignment did not assign a membership interest of LFD II to Double Down but instead was simply an outright assignment of 8% of LFD II's contractual rights to receive a payment from the Tribe. In other words, Double Down is a separate and third-party creditor of LFD II and is <u>not</u> a member or owner of LFD II.

21. The Assignment provided that the Assigned Interest would be "net of 8% of operating and interest expenses incurred by [LFD II] (whether or not reimbursable by the Tribe) after the date hereof *<u>only to the extent that such expenses have been approved by Jay Gudebski</u>* or, in the event he is no longer Manager, *<u>an approved representative of Assignee</u>* . . . and 4% of expenses incurred by [LFD II] prior to April 1, 2015 which are listed on Exhibit A attached hereto." *Id*.

22. There was no Exhibit A affixed to the Assignment.

23. LFD II never sought approval from either Jay Gudebski or any other Manager or Agent of Double Down of any specific operating and interest expenses incurred by LFD II as was required by the Assignment.

24. And neither Jay Gudebski nor any other Agent or Manager of Double Down approved of any operating or interest expenses of LFD II.

25. LFD II also never sought approval from Mr. Gudebski or any other Manager or agent of Double Down for the disbursal of settlement funds received and Double Down did not

4

expressly or implicitly approve of same, as required by the Assignment.

26. Therefore, the Assigned Interest is not subject to dilution for any operating or interest expenses of any kind or nature.

27. The Assignment further provided that Double Down's Assigned Interest was subject to *pro rata* dilution only if Double Down was requested to loan funds based upon additional "draw request[s] received from the Tribe for Tribe-approved development expenses only."

28. On three separate occasions, LFD II informed Double Down of requests for additional working capital to fund its work.

29. Double Down approved the first two of those requests and made payments in 2016, 2017 and 2018.

30. As to the third request for a small amount in January 2018, Double Down inquired as to the reasons for the request and asked for additional information and documentation. After providing information initially, Campbell ignored follow-up inquiries, leading Double Down to reasonably conclude that no further request for contribution was being made.

31. No further capital funding requests were made of Double Down by LFD II and no further expenditures were approved by Double Down or any Manager or Agent thereof.

32. Neither Campbell nor LFD II notified Double Down of any actual or potential dilution of its interests prior to 2023.

33. Therefore, Double Down's 8% Assigned Interest is undiluted as of the date of this filing and remains a full 8% interest in LFD II's Development Fee.

34. During this same period of time, the Tribe defaulted in its obligations to LFD II, giving rise to litigation between LFD II and the Tribe, known as *JLLJ et al v. Kewadin Casinos Gaming Authority et al,* Ingham County Circuit Court Case No; 21-189-CB (the "Lawsuit").

35. At issue in the Lawsuit was LFD II's interest in the Development Fee and, by extension, Double Down's Assigned Interest.

36. LFD II engaged legal counsel to act on a contingency fee basis to represent it in the Lawsuit, including upon information and belief, the Fraser Trebilcock law firm.

37. Neither LFD II nor Campbell sought or obtained approval from Double Down or any manager or agent of Double Down for the engagement of these attorneys or for any fees or expenses to be incurred in the endeavor.

38. LFD II's attorneys, including Fraser Trebilcock, represented the interests of LFD II and, based on the Assignment, the interests of Double Down in the Lawsuit in seeking payment of the Development Fee from the Tribe.

39. On or about April 7, 2023, LFD II settled the Lawsuit.

40. News reports suggest that the settlement amount paid or payable for the settlement was in the range of $25,000,000 to $30,000,000, but neither Campbell nor LFD II have provided final numbers as to funds received.

41. News reports also suggest the total amount of damages claimed against the Tribe were and the percentage of those damages claims allocable to LFD II but, again, neither Campbell nor LFD II have shared with Double Down a copy of the settlement agreement, any related emails or communications.

42. No information has been provided to Double Down specifying precisely the amounts paid to legal counsel for fees, much less what the agreed upon arrangements were per any engagement letter with the Fraser Trebilcock firm.

43. LFD II and Campbell have not provided Double Down with a clear accounting for the settlement amount or Development Fees allocable to LFD II or even how that decision was

made.

44. And neither Campbell, LFD II, nor the Fraser Trebilcock firm either sought or obtained approval from Double Down or any manager or agent of Double Down to enter into the settlement agreement in the first place or to allocate settlement funds between LFD II and the other plaintiff in that action.

45. After the Lawsuit had settled, Campbell and LFD II, with the assistance of the Fraser Trebilcock firm which had represented the interests of Double Down in the Litigation, falsely asserted that Double Down's interest in Development Fees must be reduced by fees and expenses which it incurred without seeking or obtaining the approval of LFD II, including attorney fees.

46. Campbell and LFD II, with the assistance of the Fraser Trebilcock firm which also represented Double Down's interests as a result of the Assignment during the Lawsuit, have also asserted that, in spite of the fact that Double Down's approval was never sought or given to the settlement agreement or to the allocation of settlement funds, that Double Down must nevertheless accept Campbell and LFD II's allocation of settlement funds to LFD II as forming the basis for any payments to be made to Double Down for interests in funds obtained through settlement which represent the Development Fees.

47. Campbell and LFD II, with the assistance of the Fraser Trebilcock firm which also represented Double Down's interests in the Lawsuit, have also falsely asserted that Double Down's Assigned Interest percentage has been reduced to something less than the agreed upon 8%.

48. Upon information and belief, Campbell and LFD II directed that LFD II pay the Fraser Trebilcock firm several million dollars in contingency fees in connection with the work performed in connection with the Lawsuit, never requesting that Double Down approve of such

fees and never obtaining Double Down's approval to pay such fees.  Such payment was made using funds rightfully payable to Double Down.

49. Double Down has requested that Campbell and LFD II provide full accounting of the funds received in the settlement and attributable to LFD II along with supporting documents, but Campbell and LFD II have refused.

50. Double Down requested that Campbell and LFD II provide it with evidence of expense approvals sought and of contribution requests but neither Campbell nor LFD II have any such documentation.

51. Double Down has made demand for full payment under the Assignment yet Campbell and LFD II, through the Fraser Trebilcock firm which represented the interests of Double Down in the Lawsuit, have steadfastly refused to pay Double Down the funds it is owed.

52. Campbell and LFD II have wrongfully and in bad faith withheld full and proper payment for the Assigned Interest, attempting to improperly leverage Double Down into accepting false by prepaid amounts – demanding that Double Down release LFD II from any further liabilities, which is also not a requirement of the Assignment.

## Count I – Breach of Contract

53. All prior allegations are restated and incorporated herein.

54. The Assignment between Double Down and LFD II is a valid and enforceable contract.

55. Double Down has performed all of its obligations under the Assignment contract.

56. LFD II owes Double Down 8% of all funds properly payable to LFD II under the

settlement agreement, before reduction for attorneys fees, costs and other expenses not approved in advance by Double Down.

57. As outlined above, LFD II has breached the Assignment contract by failing to accurately calculate sums payable to Double Down as a result of the settlement of the lawsuit, by paying expenses not approved in accordance with the express and unequivocal terms of the Assignment (including millions of dollars of attorney fees to the Fraser Trebilcock firm) and by timely pay Double Down the full balance of the amount owed based on the Assigned Interest, causing Double Down damages in an amount to be proven at trial, plus interest.

WHEREFORE, Double Down respectfully requests that this Court order LFD II pay Double Down damages equal to the full and undiluted amounts due for the Assigned Interest excluding costs and expenses, plus interest dating back to the vesting of Double Down's right to receive payment.

**Count II – Damages for Failure to Properly Pay LFD II
According to the Statutory Wind-Down Procedures / Improper Member Distributions in
Violation of Michigan's Statutory Wind-Down Procedures**

58. All prior allegations are incorporated herein by reference.

59. LFD II is going through the process of winding up under Michigan law.

60. Pursuant to the Michigan Limited Liability Company Act, MCL 450.4808:

> (1) Upon the winding up of a limited liability company, the assets shall be distributed in the following order:
> (a) <u>To creditors, including members who are creditors, to the extent permitted by law, in satisfaction of liabilities of the limited liability company other than liabilities for distributions to members under section 304 or 305</u>. Reasonable provision shall

> be made for debts, liabilities, and obligations that are not liquidated but will not be barred under section 806 or 807.
> (b) Except as provided in an operating agreement, to members and former members in satisfaction of liabilities for distributions under sections 304 and 305.
> (c) Except as provided in an operating agreement, all remaining assets to members and former members in accordance with their shares of distributions as determined under section 303. (Emphasis added).

61. As outlined above, Double Down is a creditor of LFD II.

62. Accordingly, and pursuant to mandatory and non-discretionary Michigan statute, LFD II is and was required to pay Double Down as a creditor prior to payment to any members for distributions or to members in accordance with their ownership percentages.

63. Notwithstanding this mandatory and non-discretionary statutory obligation, LFD II and Campbell failed to pay Double Down as a creditor prior to making distributions to owners.

64. Distributions to owners prior to the full payment to Double Down were improper.

65. Upon information and belief, as a consequence of failing to pay Double Down prior to any distribution to members, LFD II is unable to pay Double Down the amounts it owes Double Down.

66. Campbell caused LFD II to pay members before fully paying Double Down as a creditor.

67. Campbell's decision was knowing and intentional actions were intended by him and designed by him to defraud Double Down out of funds due to it.

68. Double Down has been damaged as a result of LFD II and Campbell's actions.

WHEREFORE, Double Down requests that this Court award it Judgment against LFD II and Campbell and order them, jointly and severally, to pay Double Down damages in an amount equal to the full and undiluted value of the Assigned Interest excluding any costs and expenses,

plus interest dating back to the vesting of Double Down's right to receive payment.

## Count III – Avoidance of Voidable Transfers

69. All prior allegations are incorporated herein by reference.

70. The payments by LFD II to members made before payments were to Double Down as a creditor were "transfers" within the meaning of MCL 566.31(c).

71. Campbell and LFD II made these transfers with the actual intent to hinder, delay and defraud Double Down out of its rightfully due and payable funds and Assigned Interest.

72. More specifically, upon information upon and belief, Campbell and LFD II caused LFD II to make the transfers to its members prior to and/or contemporaneously with paying Double Down – rather than first assuring proper payment to Double Down before making distributions to its members, to avoid paying Double Down funds rightfully owed to Double Down and to prefer its members over Double Down.

73. Upon information and belief, the improper transfers and distributions to LFD II's members directed by Campbell has rendered LFD II incapable of paying Double Down the full value of the Assigned Interest.

74. Double Down has been damaged as a result of LFD II's voidable transfers to members.

WHEREFORE, Double Down requests that the transfers and owner distributions made by LFD II to its members prior to paying Double Down as a creditor be voided on a *pro rata* basis up to an amount sufficient to pay Double Down the full balance due for the Assumed Interest, plus

interest.

## Count IV – Accounting

75. All prior allegations are incorporated herein by reference.

76. LFD II owed Double Down the reasonable duty to provide it with a full and accurate accounting for all Development Fees obtained as a result of the Lawsuit and to provide a full and accurate accounting for the payment owed based on the Assigned Interest, along with all detail, along with true and accurate copies of all documentation and materials supporting materials (an "Accounting").

77. Double Down has requested an Accounting from LFD II.

78. LFD II has failed to provide Double Down with the requested Accounting (or any of the related documentation and supporting documentation).

79. As a consequence, Double Down is unable to fully and accurately calculate the value of the Assigned Interest now due to it.

WHEREFORE, Double Down requests that this Court order LFD II, at its expense and without reduction of the amounts due under the Assigned Interest which accounting should exclude any reductions for unapproved costs and expenses and otherwise consistent with the allegations of this Complaint, to provide Double Down with a true and accurate accounting for the Assigned Interest due and payable to Double Down, performed by a third-party CPA firm approved of by Double Down and this Court, together with all detail and supporting documentation and materials.

## Count V – Statutory and Common Law Conversion

80. All prior allegations are incorporated herein by reference.

81. The Assigned Interest represents an identifiable interest in funds and/or personal property.

82. Double Down has an immediate right of possession of the Assigned Interests and/or funds represented thereby.

83. Campbell and LFD II have possession of the Assigned Interests and/or funds represented thereby.

84. Campbell and LFD II are wrongfully exerting dominion over the Assigned Interests and /or funds represented thereby.

85. Campbell and LFD II have stolen or embezzled the Assigned Interest and/or funds represented thereby for their own use.

86. Double Down has been damaged as a result of Campbell and LFD II's wrongful actions.

87. Consequently, Double Down is entitled to recover an amount equal to the value of the assigned interest, times three, plus reasonable costs and attorney fees incurred in collecting this amount, consistent with and as provided for by the statutory dictates of MCL 600.2919a.

WHEREFORE, Double Down requests that this Court award it damages in the amount calculated in connection with Counts I and IV, above multiplied by three, plus reasonable costs and attorney fees, plus interest dating back to the vesting of Double Down's right to receive payment against both LFD II and against Campbell personally, jointly and severally.

Dated: August 17, 2025　　　　　　　　　　　/s/ Darren Malek
　　　　　　　　　　　　　　　　　　　　　　Darren M. Malek (P57443)
　　　　　　　　　　　　　　　　　　　　　　Veritas Law Group
　　　　　　　　　　　　　　　　　　　　　　107 W. Michigan Avenue, Suite 500
　　　　　　　　　　　　　　　　　　　　　　Kalamazoo, MI 49007 / (269) 270-3500